United States versus McCoy. May it please the court, Frederick Wrench here on behalf of Robert McCoy. Mr. McCoy faced three criminal charges in the district court. His trial occurred in August of 2015. The trial took about four days. The government called the number of witnesses. The defense called no witnesses. The case involved Mr. McCoy's possession of child pornography and also the exploitation of a minor and that he was allegedly taking pictures of the minor. Images were found on Mr. McCoy's phone and images of the child victim. However, the defense was going to be actual innocence. That although the pictures were on the phone, Mr. McCoy did not take those pictures and Mr. McCoy did not know that the pictures were on his phone. All right, but we have a jury verdict here, so what are the errors you want us to address? The buildup to that, Judge, was that during the course of the trial, I attacked essentially the government's case by attempting to impeach the mother of the victim. The mother of the victim had found the images on Mr. McCoy's phone, and when she did so, she confronted Mr. McCoy. The mother had access to that phone. Mr. McCoy, during that confrontation, apparently made some damaging admissions with respect to the phone itself and the presence of little girl's pictures on that phone. The mother then spoke to the daughter. The daughter's initials are KD in the brief. KD confirmed to the mother that Mr. McCoy had taken the photographs. As she did at trial? Yes, ma'am. Okay. The mother then goes to the Bethlehem police, explains what happened, and the Bethlehem police put a wire on the mother. We understand all this. What's the error? The error, Judge, is that during the course of the trial, particularly in the rebuttal summation, the prosecutor made a number of comments which violated Mr. McCoy's rights. The actions of the prosecutor violated several rules, and I'll recite them broadly for you. She attacked defense counsel, that is myself, at least three times, referring to me as being a scurrilous attorney. She attacked the role of- Did she refer to you as a scurrilous attorney, or did she refer to the arguments as scurrilous? I believe she referred to me as the scurrilous attorney, Mr. McCoy's scurrilous attorney. Why don't you point us to that in the record? I understand that the word scurrilous was used. I thought it was with respect to your argument, and I may have read it too quickly. Yes, she used it actually, Judge, three times. She was now referring to the child testifying. That is what ended up happening. This is what happens when you- I'm sorry, Judge. It's page 14 of the brief. And from the record? That would be at 253 to 254. Thank you. This is, again, with respect to the child having to testify. That is what ended up happening. That is what happens when you have to report these things when you go to trial, and what she gets in return is scurrilous behavior by Mr. Wrench. Okay, so your behavior was described as scurrilous, not you as a person, but your behavior. That's more accurate, Judge, thank you. All right. Counsel went on to attack the role of defense counsel. During the course of the case, I suggested that the mother's credibility was an issue. I also suggested that a 12-year-old boy, which would be the brother of the victim, had access to the telephone, and therefore, these people could be responsible for the photographs being on the phone. The victim herself testified that it was your client. Exactly correct, Judge. So the victim would have been not credible as well, and her mother and her brother would have produced the pictures? Is that the defense theory? Judge, I think that's an excellent argument, that if you were to draw that- I'm not trying to call it an excellent argument. I'm just trying to understand whether it was what you were insinuating to the jury. I was insinuating that the mother or the 12-year-old boy could be responsible for those photographs. All right. You didn't have any evidentiary basis for that other than their possession of the phone for a period of time. All right. Now what's your objection to what the government said? What the government said was that when I suggested that someone else could be responsible for the photographs, she suggested that I made this up. She said, when you don't have the law on your side, you don't have the facts on your side, what you do is you make it up. Wrench was making it up. And she said to the jury rhetorically, are you okay with that? We're in a court of law, meaning any argument that I made in defense of my client was unacceptable, and they should not pay attention to the argument, not that they should- and I'm talking about that broadly written- not that they should take the argument apart, as Your Honor just did a moment ago, but that they should dismiss it and dismiss my role as defense counsel. She went on to inflame the passions of the jury. She told the jury that the government had come together for these children because there were other victims on the phone. And that was the context of those remarks was they identified the other children, that they were really children. Yes. Let's go back to your argument about made up. I mean, was there any basis in the record for thinking that the 12-year-old son had produced the photographs or the mother? Frankly, Judge, no. No. So it was made up. It was made up, but I don't care for the characterization of that. I think the proper attack is like you just mentioned a few moments ago. Well, Mr. Wrench, if the son put those pictures on there or if the mother did, that's contradicted by the testimony of the victim, and that's okay. Because we tolerate some hard blows in rebuttal, especially when witness credibility has been attacked and you're acknowledging without any basis. Judge, I think that hard blows should be exchanged, clean hard blows. But the attempt by this prosecutor to malign my character is way out of bounds. She went on. But you're maligning the character of the 12-year-old and the mother without any factual basis? Is that what we're talking about? That that was within permissible scope of argument? I think words count, Judge, and I chose my words carefully. I suggested an alternative theory without calling anyone a liar in that courtroom, particularly the 8-year-old. And I have to say, Judge, when the 8-year-old was on the stand, I got that little girl to laugh. My cross-examination of the little girl was respectful and compassionate and completely painless. I asked the questions I had to ask of that young lady, and I moved on. With respect to the mother, a little bit different, and the 12-year-old boy never testified. Additionally, there's no point in the record where the government points out that I mistreated the mother during her cross-examination. Never happened. I asked her about a forgery, and I asked her about why she lost her children. She had a preposterous story that she lost her children for two years because they were on the porch. That's absurd on its face. And as far as the forgery goes. Yes, but this was all part and parcel of suggesting that she basically put her child in the care of your client and therefore was partially responsible for the fact that your client sexually exploited the child, right? Wasn't that the insinuation being made? No, Judge, because I never admitted that my client sexually exploited that child. What I was trying to point out was that this woman was a poor mother, and she lacked credibility. Right. What's that got to do with the guilt or innocence of the accused? That's a different issue, Judge. What I'm here to discuss with the court is the conduct of this prosecutor, which undermined fundamentally the fairness of this trial. And the comments which were made by this prosecutor, not once or twice, but at least eight times in probably six different categories of unfair comments. She inflamed the passions of the jury. She vouched for the government and the government witnesses. She went outside the record. She referred to matters in an investigative file but never introduced into evidence. And she inserted her own personal beliefs into trial. Ultimately, she testified when she said a tape had been analyzed by the FBI, when there was no proof of that whatsoever. The judge gave the curative instruction, and I know you think that it should have been a mistrial. Do you want to make — your time's almost up. Do you want to address any of your other challenges? No, Judge. I think you've got the gist of your — You don't want to speak to the sentence that was imposed? Well, Judge, I think the papers — the brief can handle that. You rely a lot on our opinion in Brown, but that was subsequently vacated, and so it wouldn't seem to support your position. Am I overlooking something? You're not, Judge, but I would argue that the subject of incremental deterrence should be considered, and I'm not sure that it was considered by the trial judge at sentencing. Here we have a man who committed, according to the jury verdict, and I'm not conceding guilt, he committed a terrible act. But the child was not physically hurt, not speaking to the psychological or emotional harm that these crimes inflict. But he did not physically hurt the child, and it was a single victim, outside of the other images on the phone. And I think that to max him out in a situation like this fails to take into consideration incremental deterrence. Thank you. Thank you. Thank you. May it please the Court, my name is Stephen Clymer. I represent the United States of America in this appeal. We ask the Court to affirm both the conviction and the sentence. With respect to the unobjected to statements in the government's argument, I'd like to make four general points. First, those statements were made during rebuttal. Rebuttal argument is not carefully scripted. It's usually based on hastily drafted or written down notes taken during a defense argument. It's not always as precise and as articulate as some other arguments are. Second, the rebuttal argument was a response to the defense's relentless and oftentimes improper attack on the victim of the mother and attack on the government. Third, there was no objection to any of the comments other than the one that the district court corrected. And finally, the evidence of guilt in this case was overwhelming. Unless the Court has questions about any specifics... I'd like to ask you about the sentence. Yes, sir. So the defendant got 960 months or 80 years, 600 months for count one, 240 months for count two, and 240 months for count three to run consecutively. But weren't they the same set of acts? No, Your Honor, they were not. The count one pertained to the sexual exploitation of this victim for the purposes of producing child pornography. Count number three was the possession of child pornography, specifically pictures of other children other than this victim, some of whom were abused in horrific ways. And the court at sentencing had before it impact statements from some of those victims describing the ongoing effect that victimization and the victimization of people like McCoy looking at their pictures has on their lives. The second count arose from Defendant McCoy being a registered sex offender at the time he engaged in the conduct charged in count one. So it's this conduct, but it's an aggravator in essence. Exactly, Your Honor. One and two have a lot of similarity. Correct, Your Honor. The second count was predicated in part on the conduct charged in count one. Wouldn't 600 months have been sufficient? Well, I think that 600 months would have been sufficient to keep Mr. McCoy incarcerated for the rest of his life, so the answer is yes. What I would say about the length of the sentences is this, Your Honor. The 960 months was dictated by both the federal guidelines and statutory law. The sentence on count two had to be consecutive by law, the 10 years for that count. With respect to the sentence on count the guide... So it was a mandatory consecutive punishment. Exactly, Your Honor. With respect to the sentences on count one and count three, which were dictated by the guidelines, that was the within guidelines sentence. Obviously, the court could have sentenced below the guidelines, but in this case, there was no reason given to the district court judge to justify that. At sentencing... The judge wasn't persuaded. Counsel made arguments very much along the lines of the ones he made here, that it should have been incremental, that he hadn't physically injured the child. I mean, these arguments were made. The judge just explained why she didn't think the cited mitigators warranted a reduced sentence. And she explained it in great detail. Yes. If there's no other questions, we'll rest on our brief and ask the court to affirm both the conviction and the sentence. Thank you. We're going to take the case under advice. Yes, there's no rebuttal. And try and get you a decision. Thank you.